## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN RAUL,<br><br>          Plaintiff,<br><br>   v.<br><br>CADENCE BANCORPORATION, PAUL B. MURPHY, JR., JOSEPH W. EVANS, MARC J. SHAPIRO, J. RICHARD FREDERICKS, WILLIAM B. HARRISON, JR., VIRGINIA A. HEPNER, PRECIOUS W. OWODUNNI, KATHY N. WALLER, J. THOMAS WILEY JR.,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jonathan Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Cadence Bancorporation ("Cadence" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Cadence and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Cadence and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of Cadence by BancorpSouth Bank ("BancorpSouth") and BancorpSouth's affiliates (the "Proposed Transaction").

2.      On April 12, 2021, and as amended as of May 27, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with BancorpSouth.  Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive: (i) 0.70 shares of BancorpSouth common stock; and (ii) prior to the effective timer of the merger in connection with the closing Cadence will declare and pay a special cash dividend of $1.25 per share of Cadence common stock (the "Merger Consideration").

3.      On May 27, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Proxy Statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Cadence and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cadence shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Cadence shares.

9.      Defendant Cadence is incorporated under the laws of Delaware and has its principal executive offices located at 2800 Post Oak Boulevard, Suite 3800, Houston, Texas 77056. The Company's common stock trades on the New York Stock Exchange under the symbol "CADE."

10.     Defendant Paul B. Murphy, Jr. ("Murphy") is and has been the Chairman of the Board and Chief Executive Officer ("CEO") of Cadence at all times during the relevant time period.

11.     Defendant Joseph W. Evans ("Evans") is and has been a Cadence director at all times during the relevant time period.

12.     Defendant Marc J. Shapiro ("Shapiro") is and has been a Cadence director at all times during the relevant time period.

13.     Defendant J. Richard Fredericks ("Fredericks") is and has been a Cadence director at all times during the relevant time period.

14.     Defendant William B. Harrison, Jr. ("Harrison") is and has been a Cadence director at all times during the relevant time period.

15.     Defendant Virginia A. Hepner ("Hepner") is and has been a Cadence director at all times during the relevant time period.

16.     Defendant Precious W. Owodunni ("Owodunni") is and has been a Cadence director at all times during the relevant time period.

17.     Defendant Kathy N. Waller ("Waller") is and has been a Cadence director at all times during the relevant time period.

18.     Defendant J. Thomas Wiley Jr. ("Wiley") is and has been a Cadence director at all times during the relevant time period.

19.     Defendants Murphy, Evans, Shapiro, Fredericks, Harrison, Hepner, Owodunni, Waller, and Wiley are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant Cadence, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Companies

21.　　Cadence is a regional financial holding company with $18.7 billion in assets as of December 31, 2020. Its wholly owned subsidiary, Cadence Bank, N.A., operates 98 branch locations in Alabama, Florida, Georgia, Mississippi, Tennessee and Texas, and provides corporations, middle-market companies, small businesses and consumers with a full range of innovative banking and financial solutions. Cadence Bank's services and products include commercial and business banking, treasury management, specialized lending, asset-based lending, commercial real estate, SBA lending, foreign exchange, wealth management, investment and trust services, financial planning, retirement plan management, personal and business insurance, consumer banking, consumer loans, mortgages, home equity lines and loans, and credit cards.

### The Company Announces the Proposed Transaction

22.　　On April 12, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> TUPELO, Miss. and HOUSTON, April 12, 2021 /PRNewswire/ -- BancorpSouth Bank (NYSE: BXS) ("BancorpSouth") and Cadence Bancorporation (NYSE: CADE) ("Cadence"), the parent company of Cadence Bank, N.A., jointly announced today that they have entered into a merger agreement under which the companies will combine in an all-stock merger with a total market value of more than $6 billion to create a leading Texas and Southeastern regional bank.

> Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, Cadence shareholders will receive 0.70 shares of BXS for each share of CADE they own. Additionally, the agreement allows for a one-time special cash dividend to CADE shareholders of $1.25 per share in conjunction with the closing of the merger. BancorpSouth shareholders will own approximately 55% and Cadence shareholders will own approximately 45% of the combined company.

The company will combine the aesthetics of both brands and logos and operate as Cadence Bank. The bank will have dual headquarters in Tupelo, MS and Houston, TX, with operations centers in Tupelo, MS and Birmingham, AL as well as specialty sites in Macon, GA; Starkville, MS; and Houston, TX.

Dan Rollins will be the Chairman and Chief Executive Officer and Paul Murphy will serve as Executive Vice Chairman of the combined company. The board of directors will initially be comprised of 20 directors – 11 from BancorpSouth and nine from Cadence.

Dan Rollins commented: "Cadence has built an impressive commercial banking franchise that when combined with the strengths of our team at BancorpSouth seems to be a perfect fit. This strategic merger will allow us to expand our reach and offerings with minimal overlap in our existing branch network. Culturally speaking, our mission and values align really well together. Mergers are all about people, and what's important to note here is that our leadership teams are in sync. By joining forces, it's easy to see that we'll be able to make a significant impact on our customers and communities while driving long-term shareholder value."

"I am thrilled to partner with BancorpSouth," said Paul Murphy. "I have great respect for the franchise they have built over the last 145 years, beginning in my home state of Mississippi. The BancorpSouth community banking franchise is top tier and complements Cadence's expertise in middle-market commercial banking seamlessly. We look forward to delivering significant value to our shareholders, driven by meaningful synergies and our shared banking philosophy to put the client first. I was impressed with the team at BancorpSouth early on, and I grow even more so the more I get to know them. Like us, they really care about their people. The scale of our combined bank, our collective talent, our similar cultures and our footprint in some of the fastest-growing markets in the country have us extremely excited about the future."

**Strategically Compelling for Both Organizations**

- Builds a stronger banking franchise with relationship-focused financial services and **better opportunities for employees, customers, communities and shareholders.**
- **Builds immediate scale in highly attractive markets throughout Texas and the Southeast.** Creates the 5th largest bank headquartered in the combined nine-state footprint, with presence in seven of the top ten largest MSAs therein.
- **Combines BancorpSouth's community banking focus with Cadence's commercial banking expertise.**
- **Merges two historic institutions – BancorpSouth and Cadence have 145 and 134 years of experience, respectively.**
- **Positions the company for continued growth.** Strengthens balance sheet, capital, and reserve levels, enabling continued growth trajectory.

- **Low-risk combination.** Thorough mutual diligence performed on all key business areas with conservative overlay. Both companies have significant M&A integration expertise.

**Financially Attractive Metrics for Shareholders**

- **Significant earnings per share accretion.** 17% accretion to each of BancorpSouth's and Cadence's earnings per share in 2022 (assuming fully realized cost savings for illustrative purposes) and 14% if 75% of cost savings are realized.
- **Tangible book value accretive.** Transaction expected to be immediately accretive to tangible book value per share at close.
- **Leading pro forma profitability.** Among a peer group of $30-$60 billion in asset banks nationwide, the combined company is estimated to have the 3rd best return on tangible common equity and efficiency ratio, based on consensus earnings estimates.
- **Robust capital and reserve coverage.** Pro forma CET 1 ratio of 11.3% and ACL / loans of 2.5% estimated at the close of the transaction.

**Beneficial for Customers, Communities and Employees**

- Expands breadth of products and services available to customers.
- The combined companies will be able to make more investments in customized technology solutions.
- Environmental, social and governance principles are embedded in both cultures.
- Employees of the combined companies invested more than 24,000 service hours towards improving their communities.

**Executive Leadership**

- Dan Rollins, *Chairman and Chief Executive Officer*
- Paul Murphy, *Executive Vice Chairman*
- Chris Bagley, *President*
- Hank Holmes, *Chief Banking Officer*
- Valerie Toalson, *Chief Financial Officer*

**Approval and Timing**

The merger is expected to close in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including the receipt of customary regulatory approvals and approvals of shareholders of each company.

**Transaction Advisors**

Keefe, Bruyette & Woods, *A Stifel Company*, served as exclusive financial advisor to BancorpSouth, with Sullivan & Cromwell and Alston & Bird serving as legal advisors.

Goldman Sachs and J.P. Morgan served as lead financial advisors to Cadence and Piper Sandler also advised. Wachtell, Lipton, Rosen & Katz served as legal advisor.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

23.     On May 27, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding the Company's Financial Projections</u>**

25.     The Proxy Statement contains projections prepared by the Company's and BancorpSouth's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.     Specifically, the Proxy Statement omits the pro forma projections that were provide to Goldman Sachs & Co. LLC ("Goldman") in connection with its financial analyses and fairness opinion for the Proposed Transaction.

27.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

28.     The Proxy Statement contains the financial analyses and opinion of Goldman and J.P Morgan Securities LLC ("J.P. Morgan") concerning the Proposed Transaction, but fails to provide material information concerning such.

29.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis for Cadence on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the basis for Goldman's use of an illustrative one year forward price to EPS multiples of 10.5x and 12.5x; and (ii) the inputs and assumptions underlying Goldman's use of a 13% discount rate.

30.     With respect to Goldman's *Illustrative Discounted Dividend Analysis for Cadence on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Goldman's use of discount rates ranging from 10.5% to 15.5%; (ii) the implied distributions to Cadence shareholders on a stand-alone basis over the period beginning December 31, 2020 through December 31, 2025; (iii) the range of illustrative terminal values for Cadence; (iv) the basis for Goldman's application of an illustrative price to EPS multiples ranging from 10.5x to 12.5x; and (v) the total number of fully diluted shares of Cadence common stock outstanding.

31.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis for BancorpSouth on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the

basis for Goldman's application of an illustrative one year forward price to EPS multiples of 12.5x and 14.5x; and (ii) the inputs and assumptions underlying Goldman's use of a 9.0% discount rate.

32.     With respect to Goldman's *Illustrative Discounted Dividend Analysis for BancorpSouth on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Goldman's use of the discount rates ranging from 8.0% to 10.0%; (ii) the implied distributions to BancorpSouth shareholders on a stand-alone basis; (iii) the range of illustrative terminal values for BancorpSouth; (iv) the basis for Goldman's application of an illustrative price to EPS multiples ranging from 12.5x to 14.5x; and (v) the total number of fully diluted shares of BancorpSouth common stock.

33.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis for Cadence Shares on a Pro Forma Basis*, the Proxy Statement fails to disclose: (i) the basis for Goldman's application of an illustrative one year forward price to EPS multiples of 11.5x and 13.5x; and (ii) the inputs and assumptions underlying Goldman's use of a 10.75% discount rate.

34.     With respect to Goldman's *Illustrative Discounted Dividend Analysis for Cadence Shares on a Pro Forma Basis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Goldman's use of the discount rates ranging from 9.0% to 12.5%; (ii) the implied distributions from BancorpSouth's shareholders on a pro forma basis; (iii) the range of illustrative terminal values for BancorpSouth; (iv) the basis for Goldman's application of an illustrative price to EPS multiples ranging from 11.5x to 13.5x; and (vi) the total number of fully diluted shares of BancorpSouth common stock.

35.     With respect to J.P. Morgan's *Dividend Discount Analysis – Cadence Stand-Alone*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying J.P. Morgan's use of discount rates ranging from 11.0% to 13.0%; (ii) the basis for applying NTM P/E multiples ranging from 10.0x to 12.0x; and (iii) the range of illustrative terminal values for Cadence.

36.     With respect to J.P. Morgan's *Dividend Discount Analysis – BancorpSouth Stand-Alone*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying J.P. Morgan's use of the discount rates ranging from 10.0% to 12.0%; (ii) the basis for J.P. Morgan's applying NTM P/E multiples ranging from 12.0x to 14.0x; and (iii) the range of illustrative terminal values for BancorpSouth.

37.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

38.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

44.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

45.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

47.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

48.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Cadence within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cadence, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

53.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.    Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 1, 2021                                    Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*